UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Jacksonville Division

**IN ADMIRALTY**

GEICO Marine Insurance Company,        Case No.: 3:20-cv-00952-BJD-JRK

       Plaintiff,

vs.

Grantland Kingman, Diane Jarvis, and
Comerica Bank,

       Defendants.

_____/

## SECOND AMENDED COMPLAINT
## FOR DECLARATORY JUDGMENT

Plaintiff, GEICO Marine Insurance Company (hereinafter referred to as "GEICO Marine" or "Plaintiff"), through undersigned counsel, sues the Defendants, Grantland Kingman, Diane Jarvis and Comerica Bank (hereinafter referred to as "Kingman", "Jarvis" and "Comerica" or collectively as the "Defendants"), for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and sues Jarvis for damages, and alleges as follows:

1.      GEICO Marine files this Amended Complaint to obtain a judicial determination and declaration of the parties' rights and obligations under GEICO Marine policy number BUS5118616-03 issued to Defendants for the period from July 27, 2019 to July 27, 2020 (hereinafter the "Policy") and to recover damages.

2.      The policy attached to this complaint as Exhibit "A" is a true and correct copy of the Policy issued to the Defendants.

3.      An actual and justiciable controversy exists relating to the parties' respective rights, duties, and obligations under the Policy.

4.      Specifically, GEICO Marine seeks a declaratory judgment that the Policy does not provide coverage for claims asserted by the Defendants for damage to the S/V Monarch, a 1974 Hinckley Yachts 49-foot mono hull sailing vessel (hereinafter referred to as the "Vessel").

5.      Defendants claim that the Policy provides coverage for damage to the Vessel.

6.      GEICO Marine contends that the Policy does not provide coverage.

7.      There is an actual controversy between GEICO Marine and the Defendants involving their respective rights and liabilities under the Policy.

8.     This matter is now ripe for adjudication.

## The Parties

9.     GEICO Marine is an insurance company authorized to transact insurance business in the State of Florida.

10.     Defendants are the owners of the Vessel.

11.     Kingman resides in Green Cove Springs in Clay County, Florida.

12.     Jarvis resides in Fernandina Beach in Nassau County, Florida.

13.     Comerica is a bank and financial services company listed as the loss payee on the Policy.

## Jurisdiction and Venue

14.     This case falls within the Court's admiralty and maritime jurisdiction under 28 U.S.C. § 1333.

15.     Plaintiff designates this claim as an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

16.     Venue is proper in this district because Kingman and Jarvis reside in this district and are subject to personal jurisdiction and service of process in this district.

17.     Marine insurance policies, like the Policy GEICO Marine issued to Kingman and Jarvis, are maritime contracts subject to this Court's admiralty and maritime jurisdiction.

### Facts and Relevant Policy Provisions

18.     On or about July 20, 2020, GEICO Marine received a telephone call from Jarvis reporting that the Vessel had been vandalized and needed to be towed to a commercial dock. GEICO Marine paid one thousand three hundred dollars ($1,300.00) to have the vessel towed.

19.     In a later telephone call to GEICO Marine, Jarvis identified Kingman as the person who had vandalized the Vessel.

20.     Among other things, Jarvis stated that Kingman had cut the fuel line and damaged the Vessel's fuel pump.

21.     As support for her assertion that Kingman had vandalized the Vessel, Jarvis had her attorney provide a copy of a text message sent by Kingman to Jarvis which states that if the Vessel's engine is started "there is a risk of fire or flooding the boat.  I don't know which would happen first."

22.     GEICO Marine appointed a marine surveyor to inspect the damage, but Jarvis denied him access to the Vessel.

23.     A second attempt was made to inspect the Vessel on August 12, 2020, and on that occasion the inspection was permitted.

24.     At the time of the survey, Jarvis provided the surveyor with a written list of 21 items of alleged damage to the Vessel which she titled "List of Vandalized Property on Monarch."

25.     Based on his inspection of the Vessel, discussion with Jarvis and investigation of the claim, the surveyor made the following findings:

a.     Jarvis reported that Kingman had removed the doorknob on the back door.

b.     A vessel mechanic stated the fuel line had been gouged and cut.

c.     The fuel pumps were reported to have been mysteriously disconnected.

d.     The bow thruster had been cut out.  Jarvis told the surveyor that she thought Kingman believed she would not be able to move the vessel without it.

e.     The shore power was not charging the house batteries, which appeared to be a maintenance or mechanical issue.

f.     There was a damaged starboard aft stanchion which appeared to be a mechanical issue because the broken portion was corroded.

g.     The upper and lower lifelines were damaged which again appeared to be a mechanical issue because there was corrosion on the cables and missing plastic shroud.

h.     The striker was removed from inside the ship's bell.  Jarvis stated that she had no idea why Kingman would take that.

i.     The latch on the hatch was broken. Jarvis stated that this was not previously damaged, and it made her feel unsafe.

j.     Jarvis reported 9 feet of teak missing which was apparently taken at the time of the vandalism.

k.     The midship hatch was gouged out.

l.     The aft head was disconnected.  This appeared to be a maintenance problem.

m.     Jarvis reported that antique brass candlesticks were missing and apparently taken during the vandalism.

n.     Jarvis reported that designer prescription glasses were missing and apparently taken at the time of vandalism.

6

o.     A special wash handle was also apparently taken during the vandalism.

p.     The 50-amp splitter was destroyed. There were 2 burn marks indicating a maintenance or mechanical issue.

q.     A sizzling sound was noted when the shore power was turned on.  This was attributed to a likely maintenance or mechanical issue.

r.     The compressor would not turn on as a result of a likely maintenance or mechanical issue.

s.     The inverter was blown. The surveyor believes this is a possible maintenance or mechanical issue.

t.     The dishwasher would not start, because there were objects in the strainer.  The surveyor concluded this was most likely a maintenance or mechanical issue.

u.     Jarvis claimed that recliners on the Vessel were damaged, but the damage appeared to be from normal wear and tear with no visible signs of cuts or abuse.

v.   There is a hole in the bow. The harbor master advised that Kingman struck the dock with the bow while attempting to moor the vessel and had covered the damage with tape.

26.   Section IV, subparagraph 3 of the Policy states:

> "**We**" will pay for "**property damage**" to an "**insured boat**" its engines and items listed in **Coverage Provided** from any accidental cause including theft or vandalism.  "**We**" do not pay for any intangible loss, such as loss of use or value, living expenses, or "**obsolescence**."   All coverages are subject to the limitations and exclusions of the policy."

27.   Property damage is defined in the Policy as "direct physical injury to, or destruction of, tangible property."

28.   The coverage provided by the Policy under Section IV is subject to the following exclusions:

> 5. **Exclusions**
>
> This insurance does not cover:
>
> a.  Any loss caused directly or indirectly by wear and tear, gradual deterioration, mechanical or electrical breakdown, overheating, galvanic action, rot, mold or mildew, corrosion, electrolysis, marring, scratching, denting, vermin, animals, marine life, or insects;
>
> * * *

8

e. Any loss, damage, expense or cost of repair caused directly or indirectly by incomplete, improper or faulty repair, maintenance, or renovation;

* * *

g. Any loss, damage or expense caused intentionally by, with the knowledge of, or resulting from criminal wrongdoing by any "**insured**";

* * *

i. Any personal items (including, but not limited to, scuba gear, fishing gear including rods, reels, and tackle, sporting goods, clothing, portable televisions and stereos, and cameras, ….

29.  Additionally, Section V – General Conditions, Paragraph M provides:

"This policy is to be construed under United States federal admiralty law. In the absence of controlling United States federal admiralty law, this policy is to be construed under the laws of the state listed on the Declarations Page as "your" address of record, without regard to that jurisdiction's rules on choice of law."

30.  The damage to the Vessel claimed by the Defendants was not accidental or fortuitous.

31.  The damage to the Vessel claimed by the Defendants falls into one of the exclusions quoted above.

32.    In his Examination Under Oath ("EUO") taken on August 25, 2020, Kingman acknowledged that much of the claimed damage was simple maintenance because of wear and tear.

> The things that your surveyor found, okay, were some of the things that she wanted me to fix.  And you can see what your surveyor's comments were. They were just maintenance type items, typical wear and tear.   You know, the broken stanchion was corroded and that's probably partly why it broke. And, you know, those kind of things.  And so, you know, to me, if that happened, stanchion broke, I'd just take it off and go take it to a weld shop and get it fixed, put it back on. But Diane doesn't seem to be capable of that. She wants, you know, somebody else to pay for that, and so I think the same thing with the bow, okay.  I would never put a claim in for the damage to the bow. I've repaired -- I've repaired the stern, the sides of the hull, the bottom of the hull, the whole hard dodger was -- I made that out of fiberglass.  You know, I'm very capable of working with fiberglass and I would have never put a claim in.  I would have just finished that repair that I was doing to the bow, so.

(Kingman EUO, pp. 19:16 – 20:9).

33.    Because the reported losses are not covered or are expressly excluded under the Policy, GEICO Marine denied coverage for the losses.

## Count I – Lack of Coverage

34.    Plaintiff restates the allegations in paragraph 1 through 33 and further alleges as follows:

35.    Only accidental or fortuitous damage is covered by the Policy.

36.    Intentional damage, damage caused directly or indirectly by wear and tear, gradual deterioration or corrosion and damage resulting from lack of maintenance is not accidental or fortuitous.

37.    As the damages claimed by the Defendants are neither accidental nor fortuitous, they do not come within the coverage provided by the Policy.

WHEREFORE, GEICO Marine respectfully requests that a declaratory judgment be entered in its favor and against the Defendants finding that the Policy does not provide coverage for their losses and awarding further relief deemed proper under the circumstances.

## Count II – Intentional Acts Exclusion

38.    Plaintiff restates the allegations in paragraph 1 through 33 and further alleges as follows:

39.    Any damage to the Vessel caused intentionally by Kingman is expressly excluded from coverage.

40.    The intentional acts exclusion applies to both Defendants, even though only Kingman is alleged to have committed the damage.

41.    There is no coverage under the Policy for damage intentionally done by Kingman.

WHEREFORE, GEICO Marine respectfully requests that a declaratory judgment be entered in its favor and against the Defendants finding that any damage caused intentionally by Kingman is expressly excluded from coverage and awarding further relief deemed proper under the circumstances.

## Count III – Wear and Tear

42.    Plaintiff restates the allegations in 1 through 33 and further alleges as follows:

43.    Any damage or "loss caused directly or indirectly by wear and tear, gradual deterioration, mechanical or electrical breakdown, overheating, galvanic action, rot, mold or mildew, corrosion, electrolysis, marring, scratching [or] denting" is expressly excluded from coverage under exclusion 5a.

44.    Specifically, the following items of damage fall under this exclusion:

a.     The shore power was not charging the house batteries, which appeared to be a maintenance or mechanical issue.

b.     There was a damaged starboard aft stanchion which appeared to be a mechanical issue because the broken portion is corroded.

c.     The upper and lower lifelines were damaged which again appeared to be a mechanical issue because there was corrosion on the cables and missing plastic shroud.

d.     The aft head was disconnected.  This appeared to be a maintenance problem.

e.     The 50-amp splitter was destroyed. There were 2 burn marks indicating a maintenance or mechanical issue.

f.     A sizzling sound was noted when the shore power was turned on.  This was attributed to a likely maintenance or mechanical issue.

g.     The compressor would not turn on. The surveyor believes this is a likely maintenance or mechanical issue.

h.     The inverter was blown. The surveyor believes this is a possible maintenance or mechanical issue.

      i.     The dishwasher would not start, because there were objects in the strainer. The surveyor concluded this was most likely a maintenance or mechanical issue.

      j.     Jarvis claimed that recliners on the vessel were damaged, but the damage appeared to be from normal wear and tear with no visible signs of cuts or abuse.

45.    Because these items of damage fall under exclusion 5a., there is no coverage for them under the Policy.

WHEREFORE, GEICO Marine respectfully requests that a declaratory judgment be entered in its favor and against the Defendants finding that any damage caused directly or indirectly by wear and tear, gradual deterioration, mechanical or electrical breakdown, overheating, galvanic action, rot, mold or mildew, corrosion, electrolysis, marring, scratching denting is expressly excluded from coverage and awarding further relief deemed proper under the circumstances.

## Count IV – Personal items

46.    Plaintiff restates the allegations in 1 through 33 and further alleges as follows Plaintiff restates the allegations in 1 through 33 and further alleges as follows:

47.   Defendant's claim for loss of personal items is expressly excluded from coverage.

48.   The personal items claimed by Defendants include the following:

a.   The striker was removed from inside the ship's bell.  Jarvis stated that she had no idea why Kingman would take that.

b.   Jarvis reported that antique brass candlesticks were missing and apparently taken during the vandalism.

c.   Jarvis reported that designer prescription glasses were missing and apparently taken at the time of vandalism.

49.   Because these items of loss fall under exclusion 5i., there is no coverage for them under the Policy.

WHEREFORE, GEICO Marine respectfully requests that a declaratory judgment be entered in its favor and against the Defendants finding that any loss or damage to personal items is expressly excluded from coverage and awarding further relief deemed proper under the circumstances.

## Count V – Damages

50.   Plaintiff restates the allegations in paragraphs 1 through 33 and further alleges as follows:

51.     Plaintiff conferred a benefit on Jarvis by paying to have the Vessel towed.

52.     Jarvis had knowledge that Plaintiff paid to have the Vessel towed and voluntarily accepted and retained the benefit of that payment.

53.     The circumstances are such that it would be inequitable for the Jarvis to retain the benefit of the towage payment without paying the value thereof to the Plaintiff. Specifically, it is inequitable for the Jarvis to retain the benefit of the towing or any other expenses when the need to incur those expenses flows from damage intentionally caused by Kingman.

WHEREFORE, Plaintiff respectfully requests that this Court award it damages against the Jarvis, jointly and severally, and further relief deemed proper under the circumstances.

*(Signature page follows).*

Respectfully submitted,

WHITEBIRD, PLLC.
Attorneys for Plaintiff
GEICO Marine

/s/ Ted L. Shinkle
Ted L. Shinkle, Esq.
Florida Bar No.: 608051
730 E. Strawbridge Ave., #209
Melbourne, FL 32901
Phone:  321-327-5580
Fax: 321-327-5565
Email: tshinkle@whitebirdlaw.com
Secondary: jaliano@whitebirdlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 20th day of May, 2021 that a true and correct copy of the foregoing has been filed with the Clerk of the Court, U.S. District Court, Middle District of Florida, using the CM/ECF filing system.

/s/ Ted L. Shinkle
Ted L. Shinkle, Esq.



**DECLARATIONS PAGE**

**Issued through:**
BoatU.S. Marine Insurance
5323 PORT ROYAL RD
SPRINGFIELD VA 22151
Policy Service:877-581-2628
Claims:877-970-2628

Named      DIANE JARVIS & GRANTLAND KINGMAN
**"Insured"**   411 WALNUT ST #7144
Address    GREEN COVE SPRINGS, FL  32043

Policy No. BUS5118616-03

Policy Period: From 07/27/2019 to 07/27/2020  beginning and ending at 12:01 A.M. at the address of the named **"insured"** on this page.

Underwriting Company:   **GEICO MARINE INSURANCE COMPANY**

| Upon the Boat: | 1974 | HINCKLEY YACHTS | 49 | Monohull Sail | HRH490184974 |
|---|---|---|---|---|---|
| | YEAR | MANUFACTURER | LENGTH | TYPE | IDENTIFICATION NUMBER |

| COVERAGE IS PROVIDED ONLY WHERE AN AMOUNT OF INSURANCE IS SHOWN | | | |
|---|---|---|---|
| **COVERAGES** | **AMOUNT OF INSURANCE** | | |
| Hull and Equipment | Agreed Value | $180,000 | Incl |
| Commercial Towing and Assistance | Each Incident | $250 | Incl |
| Boating Liability (Protection and Indemnity) | Limit Each **"Accident"**, Bodily Injury and Property Damage | $500,000 | Incl |
| Fuel and Other Spill Liability | Limit Each **"Accident"** | $939,800 | Incl |
| Longshore and Harbor Workers' Compensation | Limit of Liability | Statutory | Incl |
| Medical Payments | Limit Per Person Each **"Accident"** | $10,000 | Incl |
| Boat Trailer | Agreed Value | $0 | Incl |
| Personal Effects | Replacement Cost | $5,000 | Incl |
| Uninsured Boater | Limit Each **"Accident"** | $500,000 | Incl |

**FORMS AND ENDORSEMENTS** made a part of this Policy at time of issue:
FL001      GM002      GM023      GM042      GM045

| Total Premium | $2,563.00 |
|---|---|
| State Taxes/Fees | $0.00 |
| Net Annual Premium | $2,563.00 |

**DEDUCTIBLES:**   $900   Applicable to Hull and Equipment: For any covered loss due to a **"named storm"** that occurs while the **"insured boat"** is located in AL, FL, GA, LA, MS, NC, SC, TX, the Bahamas, the Caribbean or Mexico, the deductible applied to each loss is the greater of the Hull and Equipment deductible, $1000, or 5% of boat's **"insured value"**.

$250   Applicable to Personal Effects only

**CRUISING LIMITS: While afloat, the "insured boat" shall be confined to the waters indicated below:**
**(There is no coverage outside of this area without "our" written permission.)**
Coastal and Inland waters of the U.S. and Canada
Loss, if any, payable to named **"insured"** and the Loss Payee printed below, as their interests may appear.
COMERICA BANK
P O BOX 75000
DETROIT MI  48275

Print Date:  6/4/19
FLDEC001  01 16                    INSURED COPY

EXHIBIT
A
tabbies

FL001 02 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# FLORIDA ENDORSEMENT TO THE MARINE INSURANCE POLICY

It is agreed that the Marine Insurance policy is amended as follows:

Under **SECTION II – DEFINITIONS**, the definition **E. "Bodily injury"** is removed in its entirety and replaced with the following:

   E.   **"Bodily injury"** means bodily harm, sickness or disease. **"Bodily injury"** does not include a disease which is transmitted by an **"insured"** through sexual contact, unless there is a causal connection between a covered **"accident"** and transmission. **"Bodily injury"** includes required care, loss of services and death resulting from covered bodily harm, sickness or disease.

Under **SECTION II – DEFINITIONS**, the definition **N. "Named storm"** is removed in its entirety and replaced with the following:

   N.   **"Named storm"** means a storm named by the National Oceanic & Atmospheric Administration (NOAA). Outside of United States territorial waters, **"named storm"** also means a tropical storm, tropical cyclone, hurricane, or typhoon.

Under **SECTION II – DEFINITIONS**, the definition **Q. "Personal watercraft"** is removed in its entirety and replaced with the following:

   Q.   **"Personal watercraft"** means any vessel powered by internal water jet propulsion that is designed to be operated by a person or persons sitting, standing, or kneeling on the vessel rather than within the confines of a hull.

Under **SECTION III – IN THE EVENT OF A LOSS**, **B. Actions to Take**, **1.** is removed in its entirety and replaced with the following:

   1.   Promptly upon a loss, the "**insured**" must:
      a.   Take all necessary steps to protect an **"insured boat"** and its equipment from further loss. **"We"** will pay the reasonable costs **"you"** incur in preventing further damage (Sue and Labor Expense) if the loss is covered under the **HULL AND EQUIPMENT** section of this policy. This Sue and Labor Coverage is in addition to those coverages noted under **HULL AND EQUIPMENT**. **"We"** do not cover **"your"** or an "**insured's**" labor or personal expense nor any amount in excess of the **"insured value."**
      b.   Give **"us"** notification as soon as practicable of the loss and its circumstances.
      c.   Promptly notify law enforcement if an **"insured boat"** or any of its **"boating equipment"** is stolen.

FL001 02 16

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Under **SECTION III – IN THE EVENT OF A LOSS, B. Actions to Take, 2., d.** is removed in its entirety and replaced with the following:

    **d.** Promptly notify **"us"** about and forward to **"us"** any legal papers or notices received in connection with the loss.

Under **SECTION III – IN THE EVENT OF A LOSS, B. Actions to Take, 2., e.** is removed in its entirety and replaced with the following:

    **e.** Cooperate with **"us"** in the investigation, defense, or settlement of any loss, and agree to be examined under oath as many times as **"we"** reasonably request.

Under **SECTION IV – COVERAGES, A. HULL AND EQUIPMENT, 4. Limit of Insurance, b. "Newly Acquired Boat"** is removed in its entirety and replaced with the following:

    The **"insured value"** for a **"newly acquired boat"** shall be the verifiable purchase price or $250,000, whichever is less. **"Boating equipment"** coverage value shall be limited to 10% of the **"newly acquired boat's"** purchase price. These values shall remain in effect until cancellation or until **"we"** issue **"you"** a new Declarations Page or any new endorsements.

Under **SECTION IV – COVERAGES, A. HULL AND EQUIPMENT, 4. Limit of Insurance, c. "Amount Paid to "You" in Event Of Loss," (4) Appraisal and Dispute** is removed in its entirety and replaced with the following:

    If **"you"** have met the requirements and conditions of the policy, and if the amount of a covered loss is still in dispute, **"you"** or **"we"** may demand an appraisal of such loss. Upon receipt of written demand for appraisal, each will choose and pay a competent appraiser within 30 days. The appraisers will pick a third person within 30 days to settle any differences. Each party will be responsible for payment of their own appraiser and will share the cost of the third appraiser equally. Each appraiser will separately state the amount of loss within 30 days of the naming of the third appraiser. The amount **"we"** will pay will be the award agreed to in writing by two of these appraisers less the applicable deductible shown on the Declarations Page. The appraisal and dispute process must be complete within 90 days of the date first demanded, unless extended by agreement of all parties.

    Prior to initiation of the appraisal and dispute process, an **"insured"** may initiate by written request non-binding mediation.

Under **SECTION IV – COVERAGES, C. BOATING LIABILITY (PROTECTION AND INDEMNITY), 2. Coverage Provided**, the first sentence is removed in its entirety and replaced with the following:

    If an amount is shown for this coverage on the Declarations Page, **"we"** will pay damages and any costs assessed against an **"insured"** up to that amount for any claim or suit covered under this policy for **"bodily injury"** or **"property damage"** and resulting loss of use for which an **"insured"** becomes legally liable through ownership, maintenance or use of an **"insured boat."**

FL001 02 16

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Under **SECTION IV – COVERAGES, C. BOATING LIABILITY (PROTECTION AND INDEMNITY), 3. Exclusions, f.** is removed in its entirety and replaced with the following:

    f.    **"Bodily injury"** or **"property damage"** caused by an intentional act of an **"insured"** or at the direction of an **"insured"**;

Under **SECTION IV – COVERAGES, D. FUEL AND OTHER SPILL LIABILITY, 3. Exclusions, c.** is removed in its entirety and replaced with the following:

    c.    Liability caused by or resulting from an intentional act of an **"insured,"** or at the direction of an **"insured,"** or willful misconduct of an **"insured"**; any claim for punitive damages; or, any fine, penalty or costs of defense arising out of a criminal or civil violation of law";

Under **SECTION IV – COVERAGES, G. BOAT TRAILER, 3. Limit Of Insurance, b. "Newly Acquired Trailer"** is removed in its entirety and replaced with the following:

    b.    **"We"** will cover any **"property damage"** to a newly acquired boat trailer, less the deductible, provided that **"you"** notify **"us"** within 30 days of purchase of this newly acquired boat trailer and pay any additional premium. The value of a newly acquired boat trailer shall be the verifiable purchase price.

Under **SECTION IV – COVERAGES, I. UNINSURED BOATER, 3. Arbitration** is removed in its entirety and replaced with the following:

    If **"we"** and an **"insured"** do not agree whether that person is legally entitled to recover damages under this coverage, or as to the amount of damages, either party may make written demand for arbitration.

    Upon receipt of written demand for arbitration, each party will select a competent arbitrator within 30 days. The arbitrators will select a third arbitrator within 30 days to settle any differences. If they cannot agree on the selection of a third arbitrator within 30 days, either may request that selection be made by a judge of a court having jurisdiction.

    Arbitration will take place within 30 days of the naming of the third arbitrator in the county where an **"insured"** lives, unless both parties agree otherwise. Local rules of law regarding procedure and evidence will apply. A written agreement by two of the arbitrators as to whether an **"insured"** is legally entitled to recover damages under this coverage and the amount of these damages will be binding to an **"insured"** only if agreed upon by both parties at the time of the dispute.

    Each party will pay their own chosen arbitrator and will share the expenses of the third arbitrator equally. The arbitration must be completed within 90 days of the first notice or demand for arbitration unless extended by agreement of all of the parties.

FL001 02 16

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Under **SECTION V – GENERAL CONDITIONS, A. Payment of Loss** is removed in its entirety and replaced with the following:

> After **"we"** receive all statements and supporting papers, **"we"** will process **"your"** claim.
>
> Provided **"you"** have complied with all the terms of this policy, **"we"** will pay for covered loss or damage within:
>
> a.  20 days after **"we"** receive the sworn proof of loss and reach written agreement with **"you";** or
>
> b.  30 days after **"we"** receive the sworn proof of loss and:
>
> >   1.  There is an entry of final judgment; or
> >
> >   2.  There is a filing of an appraisal award with **"us."**
>
> **"Your"** cooperation is needed to expedite settlement and payment.  If **"you"** do not provide all requested papers within a year of the loss, the claim may be voidable.

Under **SECTION V – GENERAL CONDITIONS, C. Cancellation** is removed in its entirety and replaced with the following:

> **C.  Cancellation/Non-Renewal**
>
> 1.  **POLICY PREMIUM AND RENEWAL:** The premium shown on the Declarations Page is the initial premium for this policy. If **"we"** agree to renew the policy, then at the time of each renewal, on the policy anniversary date, the premium for the renewal will be computed by **"us"** according to **"our"** premium rules, forms and guidelines then in use. **"We"** may non-renew this policy by delivering or mailing to **"you"** at **"your"** mailing address shown on the Declarations Page or the last address shown on **"our"** records, at least 45 days before the end of the Policy Period, a written non-renewal notice. Proof of mailing or delivery of this notice to **"you"** shall be sufficient proof that notice of non-renewal was given.
>
> 2.  **CANCELLING THE POLICY:  "You"** may cancel the policy at any time by providing **"us"** with advance notification of the cancellation date.
>
> > When this policy has been in effect for 90 days or less, **"we"** may cancel immediately if there has been a material misstatement or misrepresentation or failure to comply with underwriting requirements. **"We"** may also cancel this policy subject to the following provisions. A written cancellation notice, together with the specific reasons for cancellation, will be delivered to **"you,"** or mailed to **"you"** at **"your"** mailing address shown on the Declarations Page, or the last address shown on **"our"** records.
> >
> > a.  When **"you"** have not paid the premium, **"we"** may cancel at any time by giving **"you"** notice of cancellation at least 10 days before the date cancellation takes effect.
> >
> > b.  When this policy has been in effect for 90 days or less, **"we"** may cancel for any reason, by giving **"you"** notice of cancellation at least 20 days before the date cancellation takes effect.
> >
> > c.  When this policy has been in effect for more than 90 days, **"we"** may cancel:
> >
> > >   1)  If there has been a material misstatement;
> > >
> > >   2)  If the risk has changed substantially since the policy was issued;
> > >
> > >   3)  In the event of failure to comply with underwriting requirements established by **"us"** within 90 days of the effective date of coverage; or
> > >
> > >   4)  If the cancellation is for all **"insureds"** under policies of this type for a given class of **"insureds."**

FL001 02 16

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

This can be done by giving **"you"** notice of cancellation at least 45 days before the date cancellation takes effect. Proof of mailing or delivery of the cancellation notice to **"you"** shall be sufficient proof that notice of cancellation was given. The date of the cancellation stated in the notice shall become the end of the policy period.

3. **POLICY PREMIUM AND CANCELLATION:** Cancellation may be effective prior to the return of premium, if any. The return premium will be calculated on a pro-rata basis, and the return premium will not be less than 90% of the pro rata unearned premium. Unearned premium will be returned within 15 working days after the effective date of cancellation.

Under **SECTION V – GENERAL CONDITIONS, F. Private Pleasure Limitation** is removed in its entirety and replaced with the following:

There is no coverage during any period of chartering, leasing, commercial use or exhibition, or any other non-private pleasure use unless **"you"** have prior written permission from **"us."** There is no coverage if an **"insured boat"** is used for illegal activities with any **"insured's"** permission.

Under **SECTION V – GENERAL CONDITIONS, G. Other Insurance** is removed in its entirety and replaced with the following:

1. When this policy and any other policy covers on the same basis, **"we"** will pay only **"our"** share. **"Our"** share is the proportion that the **Limit of Insurance** of **"our"** policy bears to the total of the limits of all the policies covering on the same basis. For non-owned boats, this policy shall apply as excess over all other insurance.

2. With regards to **HULL AND EQUIPMENT, BOAT TRAILER**, and **PERSONAL EFFECTS** coverages, the combined amount of all available insurance shall not exceed the highest limits of any one policy issued by the company for any loss. This provision only applies when there are multiple policies issued by the same company.

Under **SECTION V – GENERAL CONDITIONS, J. Fraud and Concealment** is removed in its entirety and replaced with the following:

There is no coverage from the beginning of this policy if an **"insured"** has omitted, concealed, misrepresented, sworn falsely, or committed fraud in reference to any material matter relating to this insurance before or after any loss.

Under **SECTION V – GENERAL CONDITIONS, K. Legal Action Against "Us"** is removed in its entirety and replaced with the following:

No legal action may be brought against **"us"** unless there has been full compliance with all terms of this policy. With respect to any claim or loss to insured property, the action must begin within five years of the date of loss or damage. With respect to any other claim or loss, no legal action may be brought against **"us"** until **"we"** agree in writing that an **"insured"** has an obligation to pay a specified amount, or until the amount of that obligation has been finally determined by judgment after trial. No one has a right under this policy to bring **"us"** into any action to determine the liability of an **"insured."** If any time limitations of the policy are prohibited or invalid under applicable law, then legal action against **"us"** must begin within the shortest limitation of time permitted by such law."

FL001 02 16

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Under **SECTION V – GENERAL CONDITIONS**, the following is added:

**Conformity to Law**

Any terms of this policy that conflict with the laws of the state where this policy is issued are considered amended to conform to such laws.

**Inquiries**

Questions regarding **"your"** policy or coverage should be directed to:

GEICO Marine Insurance Company

1-800-283-2883

Under **SECTION VI – GENERAL EXCLUSIONS**, **A. Racing Exclusion** is removed in its entirety and replaced with the following:

**"We"** will not provide any coverage for powerboats while engaged in any speed race or test by an **"insured." "We"** do cover predicted log cruises or similar competitions and sailboat racing.

Under **SECTION VI – GENERAL EXCLUSIONS**, **B. War, Seizure, Nuclear Exclusion, 2.** is removed in its entirety and replaced with the following:

**2.** War (declared or undeclared), civil war, insurrection, rebellion, revolution, or any consequence of these;

All other terms, conditions, and agreements of the policy remain unchanged.

FL001 02 16                                                                 Page 6 of 6

Policy No: BUS5118616-03            Policy Term: 07/27/19 - 07/27/20            Tran Effect: 07/27/19



# Marine Insurance Policy

Underwritten by:
**GEICO Marine Insurance Company**
A Stock Company
Administrative Offices
5323 Port Royal Road
Springfield, VA 22151-2106
Claims: 877-970-2628

# MARINE INSURANCE POLICY

## Table of Contents

Declarations Page and any Endorsements ....................................................................................Insert
Section I – Insuring Agreement ......................................................................................................2
Section II – Definitions...................................................................................................................2
Section III – In the Event of a Loss................................................................................................3
Section IV – Coverages
      Hull and Equipment ..............................................................................................................4
      Commercial Towing and Assistance ....................................................................................6
      Boating Liability (Protection and Indemnity) ........................................................................6
      Fuel and Other Spill Liability................................................................................................8
      Longshore and Harbor Workers' Compensation .................................................................8
      Medical Payments ................................................................................................................9
      Boat Trailer ..........................................................................................................................9
      Personal Effects..................................................................................................................10
      Uninsured Boater................................................................................................................11
Section V – General Conditions ....................................................................................................12
Section VI – General Exclusions ...................................................................................................13

**TO REPORT A CLAIM, 7 DAYS A WEEK: BoatU.S. CLAIMS 800-937-1937**
**In the Event of an Accident**
- See to the welfare of any injured people.
- Do not discuss fault or cause.
- Notify the appropriate local officials.
- Notify Claims immediately!

**POLICY ASSISTANCE: BoatU.S. POLICY SERVICE 800-283-2883**
- Ask for an **UNDERWRITER** if you have a question about policy coverage, premium, or are trading boats.
- Ask for **POLICY SERVICE** if you need policy confirmation for your bank, have paid off a loan, or sold the boat.
- Ask for **MARINE INSURANCE ACCOUNTS** if you need information on making payment arrangements or on the status of your account.

GEICO Marine Insurance Company
A Stock Company
Administrative Offices
5323 Port Royal Road
Springfield, VA 22151-2106

877-580-2628

# MARINE INSURANCE POLICY

## SECTION I – INSURING AGREEMENT

**"We"** will provide the coverages shown on the Declarations Page, contained in this policy and any endorsements, for any covered loss that occurs during the policy period, on the condition that **"you"** pay the premium and comply with all of the policy provisions.

## SECTION II – DEFINITIONS

Throughout this policy, **"you"** and **"your"** refer to the individual, individual(s), or legal entity named on the Declarations Page, and **"we," "us,"** and **"our"** refer to the company providing this insurance.

In addition, certain words and phrases are defined as follows:

**A. "Abandon"** means the act of voluntarily giving up, surrendering, deserting or relinquishing property and all rights to its control with the intention of terminating ownership and without the intention of vesting ownership with any other person or entity.

**B. "Accident"** means a sudden and unexpected event or occurrence to which this insurance applies which happens within the policy period. Continuous or repeated exposure to substantially the same general condition, unless excluded, is considered to be one **"accident."**

**C. "Actual cash value"** means the value of the covered property at the time of loss or damage. For partial losses this will mean replacement cost less depreciation. For a total or constructive total loss, this will be determined by industry reference materials including, but not limited to, the N.A.D.A. book, the BUC Used Price Guide, and ABOS Marine Blue Book.

**D. "Boating equipment"** means equipment owned by **"you"** and regularly carried aboard an **"insured boat"** that is considered normal for the safe operation and routine maintenance of the **"insured boat."**

**E. "Bodily injury"** means bodily harm, sickness or disease, except a disease which is transmitted by an **"insured"** through sexual contact. **"Bodily injury"** includes required care, loss of services and death resulting from covered bodily harm, sickness or disease.

**F. "Dinghy"** means a boat not to exceed 15' length overall, including an outboard motor that does not exceed 40 horsepower, if so equipped. The maximum coverage for any **"dinghy"** and its outboard is $15,000. The **"dinghy"** must be primarily used as the tender to an **"insured boat"** listed on the Declarations Page.

**G. "Family member"** means any person related to an **"insured"** by blood, marriage, civil union, domestic partnership, or adoption, including a ward or foster child, who resides in an **"insured's" "household."**

**H. "Fuel spill"** means the unintentional discharge, leakage or spillage of petroleum products or chemicals.

**I. "Household"** means **"you"** and any person related to **"you"** by blood, marriage, civil union, domestic partnership, or adoption, including a ward or foster child, residing in a fixed, permanent place of abode, where the intent is to return to that place, despite periods of temporarily living elsewhere or temporary absences.

**J. "Insured"** is defined separately in Section III and in each coverage under Section IV, under the heading **Who Is An "Insured."** An **"insured"** under one section or coverage may not be an **"insured"** under other sections or coverages. Please carefully review the **Who Is An "Insured"** provision at the beginning of Section III and the beginning of each coverage under Section IV in order to understand who is an **"insured"** under that section or coverage.

**K. "Insured boat"** means the boat which is named on the Declarations Page, or a **"newly acquired boat."**

**L. "Insured trailer"** means a trailer owned by **"you"** to regularly store or transport an **"insured boat."**

**M. "Insured value"** means the value of an **"insured boat"** or **"insured trailer,"** as shown on the Declarations Page.

**N. "Named storm"** means a storm named by the National Oceanic & Atmospheric Administration (NOAA). Outside of United States territorial waters, **"named storm"** also means a tropical storm, tropical cyclone, hurricane, or typhoon, whether named or unnamed by any governmental authority.

**O. "Newly acquired boat"** means a boat which **"you"** purchase during the policy period provided **"you"** notify **"us"** in writing within 30 days of

## SECTION II – DEFINITIONS CONTINUED

purchase of this **"newly acquired boat"** and pay any additional premium. A **"newly acquired boat"** shall be deemed an **"insured boat"** for all purposes except valuation, and shall be subject to the conditions and limitations of the policy.

**P. "Obsolescence"** means the loss of value due to changes in technology, not physical loss or damage, which render the item no longer useful.

**Q. "Personal watercraft"** means any vessel designed to be operated by a person or persons sitting, standing, or kneeling on the vessel rather than within the confines of a hull.

**R. "Pet"** means an animal owned by **"you"** or **"your"** **"family member."**

**S. "Property damage"** means direct physical injury to, or destruction of, tangible property.

**T. "Uninsured boat"** means a boat owned or operated by an **"uninsured boater."**

**U. "Uninsured boater"** means an owner or operator of a boat other than an **"insured boat"** named on the Declarations Page, who is legally responsible for a collision with an **"insured boat,"** and:

    1. To whom no liability policy applies; or

    2. Who cannot be identified (such as a hit-and-run operator).

## ═══ SECTION III – IN THE EVENT OF A LOSS ═══

**A. Who Is An "Insured"**

For purposes of this section only, **"insured"** is defined as:

1. **"You"**;

2. **"Your"** **"family member(s)"**; and

3. Any other person using an **"insured boat"** with **"your"** direct and prior permission and without compensation.

**B. Actions To Take**

1. Immediately upon a loss, the "**insured**" must:

    a. Take all necessary steps to protect an **"insured boat"** and its equipment from further loss. **"We"** will pay the reasonable costs **"you"** incur in preventing further damage (Sue and Labor Expense) if the loss is covered under the **HULL AND EQUIPMENT** section of this policy. This Sue and Labor Coverage is in addition to those coverages noted under **HULL AND EQUIPMENT. "We"** do not cover **"your"** or an **"insured's"** labor or personal expense nor any amount in excess of the **"insured value."**

    b. Give **"us"** immediate notification of the loss and its circumstances.

    c. Promptly notify law enforcement if an **"insured boat"** or any of its **"boating equipment"** is stolen.

2. Following a loss the **"insured"** must:

    a. Give **"us"** the opportunity to inspect the damaged boat or equipment before it is repaired or discarded.

    b. Submit a statement describing the loss and any records needed to verify the loss, its amount, and **"your"** interest in any property damaged or lost.

    c. Assume no obligation, admit no liability and incur no expense for which **"you"** or **"we"** may be liable without **"our"** written permission, other than reasonable expenses incurred to protect the property from further damage.

    d. Immediately notify **"us"** about and forward to **"us"** any legal papers or notices received in connection with the loss.

    e. Cooperate with **"us"** in the investigation, defense, or settlement of any loss, and agree to be examined under oath as many times as **"we"** request.

    f. Allow examinations by physicians of **"our"** choice, when pertinent to the loss.

    g. Help **"us"** to obtain copies of medical reports and records.

    h. Give **"us"** a final notarized statement, which shall be called Proof of Loss, if requested.

# SECTION IV – COVERAGES

## A. HULL AND EQUIPMENT

1. **Who Is An "Insured"**

   For purposes of **HULL AND EQUIPMENT** coverage only, **"you"** are the **"insured."**

2. **Coverage Provided**

   If an amount is shown for this coverage on the Declarations Page, **"we"** will cover an **"insured boat"** including its hull, machinery, outboard motors, sails, spars and furniture. **"We"** also cover **"boating equipment"** as well as a **"dinghy"** and computer hardware and software up to a maximum limit of $2,500.

3. **Types Of Losses Covered**

   **"We"** will pay for **"property damage"** to an **"insured boat,"** its engines and items listed in **Coverage Provided** from any accidental cause including theft or vandalism. **"We"** do not pay for any intangible loss, such as loss of use or value, living expenses, or **"obsolescence."** All coverages are subject to the limitations and exclusions of the policy.

4. **Limit Of Insurance**

   a. **"Insured Value"**

   **"We"** agree with **"you"** that an **"insured boat"** and other covered property shall be valued at the amount shown on the Declarations Page or any endorsements.

   b. **"Newly Acquired Boat"**

   The **"insured value"** for a **"newly acquired boat"** shall be the verifiable purchase price or $250,000, whichever is less. **"Boating equipment"** coverage shall be limited to 10% of the **"newly acquired boat's"** purchase price. These values shall remain in effect until cancellation or until **"we"** issue **"you"** a new Declarations Page or any new endorsements. **"We"** may amend the premium, change the policy terms or conditions, cancel this coverage on the **"newly acquired boat,"** or require further conditions for continued coverage.

   c. **Amount Paid To "You" In Event Of Loss**

   In the event of:

   (1) **Total or Constructive Total Loss**

   **"We"** will pay **"you"** the **"insured value"** as defined by this policy if an **"insured boat"** is lost absolutely, or if the reasonable cost of repair exceeds the **"insured value."** **"We"** reserve the right to declare an **"insured boat"** a constructive total loss and pay **"you"** the **"insured value"** if in **"our"** judgment costs of the repair and the post-casualty value of an **"insured boat"** exceeds its **"insured value."** **"We"** are not obligated to accept or pay for an **"insured boat"** or any **"boating equipment"** which **"you" "abandon."** If **"we"** pay **"you"** the **"insured value,"** **"we"** have the right to the **"insured boat."** If **"we"** exercise **"our"** right to acquire the **"insured boat," "you"** must provide all documents needed to transfer title to **"us." "You"** agree to allow **"us"** to withhold an amount not to exceed 10% of the **"insured value"** until **"we"** have received these documents.

   (2) **Repairs for Partial Loss**

   **"We"** will pay the reasonable cost of repairs or replacements, in accordance with quality marine repair practice, less depreciation. Depreciation shall be calculated at 10% for each year beginning with the 20th year from manufacture. In all cases, there shall remain no less than 20% residual value regardless of age. In the event of damage to plywood, plastic, fiberglass, metal, cement, or other molded material, **"we"** are obligated to pay only the reasonable cost of repairing the damaged area, in accordance with quality marine repair practice. If there is a covered loss requiring repainting of an **"insured boat," "we"** will pay the cost of repainting or resurfacing the damaged area in accordance with customary marine repair practices so that the area repaired will match, as closely as practical, the original color. **"We"** have the option to make or reimburse **"you"** for repairs or replacements, or to pay **"you"** directly based on an agreed estimate of loss. Repairs and replacements will be made with like kind and quality.

   In the event of damage to a **"dinghy"** with cost of repair exceeding the

## SECTION IV – COVERAGES CONTINUED

"actual cash value" of the "dinghy," the most "we" will pay is the "actual cash value" as determined by industry reference materials including, but not limited to, the N.A.D.A. book, the BUC Used Price Guide, and ABOS Marine Blue Book.

**(3) Unrepaired Damage**

"We" do not cover any previously unrepaired damage.

**(4) Appraisal and Dispute**

If "you" have met the requirements and conditions of the policy, and if the amount of a covered loss is still in dispute, "you" or "we" may demand an appraisal of such loss. Upon receipt of written demand for appraisal, each will choose and pay a competent appraiser within 30 days. The appraisers will pick a third person within 30 days to settle any differences. Each party will be responsible for payment of their own appraiser and will share the cost of the third appraiser equally. Each appraiser will separately state the amount of loss within 30 days of the naming of the third appraiser. The amount "we" will pay will be the award agreed to in writing by two of these appraisers less the applicable deductible shown on the Declarations Page. The appraisal and dispute process must be complete within 90 days of the date first demanded, unless extended by agreement of all parties. If the appraisal and dispute process is not complete within 90 days of the date first demanded, the original settlement amount will be deemed accepted and final.

**5. Exclusions**

This insurance does not cover:

**a.** Any loss caused directly or indirectly by wear and tear, gradual deterioration, mechanical or electrical breakdown, overheating, galvanic action, rot, mold or mildew, corrosion, electrolysis, weathering, marring, scratching, denting, vermin, animals, marine life, or insects; however, "we" will cover immediate consequential "property damage" resulting from any fire, explosion, sinking, demasting, collision or stranding;

**b.** Any loss caused by or resulting from ice or freezing;

**c.** Any loss or damage caused by or resulting from blistering or delamination;

**d.** Any cost of repair or replacement of a part which fails as a result of a defect in manufacture or construction; however, "we" will cover consequential "property damage" that results from such failure if not otherwise excluded;

**e.** Any loss, damage, expense or cost of repair caused directly or indirectly by incomplete, improper or faulty repair, maintenance, or renovation;

**f.** Any liability for wages or provisions furnished to captain or crew;

**g.** Any loss, damage or expense caused intentionally by, with the knowledge of, or resulting from criminal wrongdoing by any "insured";

**h.** Any "insured's" personal labor, personal expenses, time, loss of income or wages, lodging, meals, or travel expenses; or

**i.** Any personal items (including, but not limited to, scuba gear, fishing gear including rods, reels, and tackle, sporting goods, clothing, portable televisions and stereos, and cameras), fuel, perishables, and consumables (including, but not limited to, food, ice, beverages, paper, and cleaning products).

**6. Deductible**

The applicable deductible amount shown on the Declarations Page will be subtracted from each loss. It will not apply in the event of a total or constructive total loss.

**a. "Named Storm" Deductible**

In the event of any loss caused directly or indirectly by a storm named by the National Oceanic & Atmospheric Administration (NOAA), and if an "insured boat" is located in, North Carolina, South Carolina, Georgia, Florida, Alabama, Mississippi, Louisiana, Texas, the Bahamas, the Caribbean, or Mexico at the time of the loss, the deductible subtracted from each loss, whether a partial or a total loss, will be the deductible amount shown on the Declarations Page, $1,000, or 5% of the amount shown for **HULL AND EQUIPMENT** on the Declarations Page, whichever is greatest.

The 5% deductible stated above shall reduce to 3% if, at the time of loss, an "insured boat" is completely on land and firmly lashed to in-ground anchors, footings

## SECTION IV – COVERAGES CONTINUED

or similar in-ground structures and the canvas and/or sails are removed from the exterior of an **"insured boat."**

**b. Diminishing Deductible**

With the exception of any applicable "**named storm**" deductible or theft deductible, the deductible applicable to **HULL AND EQUIPMENT** is subject to the following:

If during any policy period "**you**" do not have a loss on an **"insured boat"** which "**we**" have paid under **HULL AND EQUIPMENT**, then:

(1) Any **HULL AND EQUIPMENT** deductible shall be reduced for the following policy period by 25% of the original deductible; and

(2) No **HULL AND EQUIPMENT** deductible will apply to the fifth consecutive policy period and thereafter if "**you**" do not have any paid losses during the four previous consecutive policy periods. If "**you**" have a loss at any time for which "**we**" make a payment under **HULL**

**AND EQUIPMENT**, then the most recent elected deductible for **HULL AND EQUIPMENT** will be restored for the subsequent policy period for any "**insured boat**" for which the **Diminishing Deductible** applies. Thereafter, the deductibles for any "**insured boat**" for which the **Diminishing Deductible** is applicable may again be reduced if the conditions set forth above are satisfied.

The provisions in this policy regarding **Diminishing Deductible** will not be affected by reimbursement made under **Section V - General Conditions, D. Hurricane Preparation.**

**7. Salvage Charges**

In the event of a salvage claim against an **"insured boat,"** coverage is limited to an amount not to exceed the **"insured value."** This amount is in addition to the amount shown for **HULL AND EQUIPMENT** on the Declarations Page.

### B. COMMERCIAL TOWING AND ASSISTANCE

If an amount is shown for this coverage on the Declarations Page, please refer to the endorsement(s) "**we**" issued to "**you**".

### C. BOATING LIABILITY (PROTECTION AND INDEMNITY)

**1. Who Is An "Insured"**

For purposes of **BOATING LIABILITY (PROTECTION AND INDEMNITY)** coverage only, "**insured**" is defined as:

**a.** "**You**";

**b.** "**Your**" "**family member(s)**"; and

**c.** Any other person operating an **"insured boat"** with "**your**" direct and prior permission and without compensation.

**2. Coverage Provided**

If an amount is shown for this coverage on the Declarations Page, "**we**" will pay damages and any costs assessed against an "**insured**" up to that amount for any claim or suit covered under this policy for "**bodily injury**" or "**property damage**" for which any "**insured**" becomes legally liable through ownership, maintenance or use of an "**insured boat**."

"**We**" will settle or defend, as "**we**" consider appropriate, any claim or suit covered under this policy which asks for these damages. "**We**" will pay for an attorney "**we**" select to defend an "**insured**." The cost of defense is in addition to the limit of insurance as stated on the Declarations Page. "**We**" will also pay the cost of bonds to release property that is being used to secure an "**insured's**" legal obligation in any suit "**we**" defend. The amount of the bond shall not exceed the amount shown for **HULL AND EQUIPMENT** or **BOATING LIABILITY (PROTECTION AND INDEMNITY)** on the Declarations Page, whichever is less.

Once "**we**" have paid the limit of liability for any covered damages, including removal of wreck, "**our**" obligation to pay any damages, or to provide any "**insured**" with a defense, ends.

## SECTION IV – COVERAGES CONTINUED

**a. Operating Other Boats**

**"We"** will provide this boating liability coverage to **"you"** and **"your"** **"family member(s),"** subject to the other provisions of this policy, while operating another boat with the permission of its owner. However, **"we"** do not cover loss or damage to the other boat or its **"boating equipment."** If there is any other available insurance, **"we"** will provide this coverage only as excess over all other available insurance. The liability coverage under this section will not apply if the other boat is:

**(1)** A **"personal watercraft"**;

**(2)** Rented or chartered;

**(3)** Used for any other commercial purpose; or

**(4)** Furnished for the regular use of, or owned wholly or in part by **"you"** or **"your"** **"family member."**

**b. Removal Of Wreck**

**"We"** will pay for the removal or disposal of the wreck of an **"insured boat"** if **"you"** are legally obligated to do so, even if such attempts to remove the wreck fail.

**3. Exclusions**

**"We"** do not provide liability coverage for:

**a.** **"Bodily injury"** to any **"insured"**;

**b.** Damage to property owned by any **"insured"**;

**c.** Liability which has been assumed by an **"insured"** under a contract or agreement, or any breach of contract;

**d.** **"Bodily injury"** or **"property damage"** from an **"accident"** that occurs while an **"insured boat"** or **"insured trailer"** is being transported by a land-based motorized vehicle;

**e.** **"Bodily injury"** or **"property damage"** arising out of an **"insured"** or other person parasailing, kite skiing, hoverboarding, fly boarding, hydro foiling, or riding in/on any other device that is designed to become airborne from an **"insured boat"**;

**f.** **"Bodily injury"** or **"property damage"** caused by or resulting from an intentional act of an **"insured"**;

**g.** Any claim for punitive damages; or any fine, penalty or costs of defense arising out of a criminal or civil violation of law or assessment by a governmental authority;

**h.** Injuries for which benefits are required to be provided by the **"insured"** or which are available to the injured person under any state or federal compensation law or act regardless of its source, and any claims by captain or crew for maintenance and cure, Jones Act liability, or unseaworthiness;

**i.** Cost of the containment, clean-up or resulting **"bodily injury"** or **"property damage"** or assessments related to the discharge, leakage or spillage of petroleum products, chemicals, bacteria, viruses, mold or other substances of any kind or nature;

**j.** **"Bodily injury"** or **"property damage"** caused by or resulting from a **"pet"**; or

**k.** Liability of a paid captain or crew.

**4. Limit Of Insurance**

**a.** If the declarations page shows a coverage amount for Boating Liability "Limit Each **'Accident'**, **'Bodily Injury'** and **'Property Damage'**," then the amount shown is the most **"we"** will pay for all damages for **"bodily injury"** or **"property damage"** regardless of the number of **"insureds,"** persons claiming damages, claims made, or boats involved in any **"accident"** or series of **"accidents"** arising out of the same event.

**b.** If the declarations page shows coverage amounts for Boating Liability "Limit Per Person, Each **'Accident'**, **'Bodily Injury'** and **'Property Damage'**/Aggregate Limit Each **'Accident'**," then:

**(1)** The coverage amount shown for the "Limit Per Person, Each **'Accident'**, **'Bodily Injury'** and **'Property Damage'**" is the most **"we"** will pay for all damages arising out of **"bodily injury"** and **"property damage"** to one person in any **"accident"** or series of **"accidents"** arising out of the same event, including the damages sustained by anyone else as a result of that **"bodily injury"** or **"property damage"**; and

**(2)** The coverage amount shown for the "Aggregate Limit Each **'Accident'**" is, subject to the "Limit Per Person, Each **'Accident'**, **'Bodily Injury'** and **'Property Damage'**," the most **"we"** will pay for all damages arising out of **"bodily injury"** and **"property damage"**, regardless of the number of **"insureds"**, persons claiming damages, claims made, or boats involved in any **"accident"** or series of **"accidents"** arising out of the same event.

## SECTION IV – COVERAGES CONTINUED

### D. FUEL AND OTHER SPILL LIABILITY

**1. Who Is An "Insured"**

For purposes of **FUEL AND OTHER SPILL LIABILITY** coverage, **"insured"** is defined as:

**a. "You"**;

**b.** A **"family member(s)"**; and

**c.** Any other person operating an **"insured boat"** with **"your"** direct and prior permission and without compensation.

**2. Coverage Provided**

If an amount is shown for this coverage on the Declarations Page, **"we"** will pay up to that amount for the containment, clean-up, **"property damage"** and assessments resulting from a **"fuel spill"** from an **"insured boat"** for which any **"insured"** becomes legally liable through the ownership, maintenance or use of an **"insured boat."** **"We"** will settle or defend, as **"we"** consider appropriate, any claim or suit which asks for these covered expenses and/or damages. **"We"** will also pay for an attorney **"we"** select to defend the **"insured."** Once **"we"** have paid the limit of liability for containment, clean-up, resulting **"property damage"** and/or assessments related to a **"fuel spill," "our"** obligation to pay any damages, or to provide the **"insured"** with a defense, ends. This additional coverage will not apply if an **"insured"** fails or refuses:

**a.** To report the incident giving rise to liability as required by law when the **"insured"** knows or has reason to know of the incident; or

**b.** To provide all reasonable cooperation and assistance requested by a responsible official in connection with containment and clean-up activities.

**3. Exclusions**

**"We"** do not provide any coverage under this section for:

**a.** Liability which has been assumed by an **"insured"** under any contract or agreement;

**b.** Liability arising out of the transportation of an **"insured boat"** or **"insured trailer"** on land;

**c.** Liability caused by or resulting from an intentional act or willful misconduct of an **"insured"**; any claim for punitive damages; or, any fine, penalty or costs of defense arising out of a criminal or civil violation of law;

**d.** Liability arising out of the discharge, emission, spillage or leakage of any radioactive material or substance of any kind; or,

**e.** Liability for **"bodily injury."**

**4. Limit Of Insurance**

The amount shown for this coverage on the Declarations Page is the most **"we"** will pay regardless of the number of **"insureds,"** claims made, or boats involved in any one **"accident,"** or series of **"accidents"** arising out of the same event.

### E. LONGSHORE AND HARBOR WORKERS' COMPENSATION

**1. Who Is An "Insured"**

For purposes of **LONGSHORE AND HARBOR WORKERS' COMPENSATION** coverage, **"you"** are the **"insured."**

**2. Coverage Provided**

If an amount is shown for this coverage on the Declarations Page, **"we"** will pay damages up to that limit for any liability and costs of defending such liability which **"you,"** as owner of an **"insured boat,"** incur during the term of this policy, under the Federal Longshore and Harbor Workers' Compensation Act.

GMPOL001 03 16

## SECTION IV – COVERAGES CONTINUED

### F. MEDICAL PAYMENTS

1. **Who Is An "Insured"**

   For purposes of **MEDICAL PAYMENTS** coverage only, **"insured"** is defined as:

   a. **"You"**;

   b. **"family member(s)"**; and

   c. Any other person using an **"insured boat"** with **"your"** direct and prior permission and without compensation.

2. **Coverage Provided**

   If an amount is shown for this coverage on the Declarations Page, **"we"** will pay the necessary medical and funeral expenses resulting from a **"bodily injury"** to the **"insured"** or a guest from an **"accident"** which occurs while in, upon, boarding, or leaving an **"insured boat"** as well as injury to an **"insured"** or a guest water skiing from an **"insured boat."** These expenses must be incurred within three years from the date of the **"accident."** If there are any other available medical benefits or plans that offer coverage for medical expenses to the **"insured,"** this coverage will be excess over other such insurance or benefits.

3. **Exclusions**

   **"We"** do not provide **MEDICAL PAYMENTS** coverage for:

   a. Responsibility assumed by an **"insured"** under any contract or agreement;

   b. **"Bodily injury"** from an **"accident"** that occurs while an **"insured boat"** or **"insured trailer"** is being transported by a land-based motorized vehicle;

   c. Injury to a trespasser on an **"insured boat"**;

   d. Anyone while an **"insured boat"** is engaged in parasailing, kite skiing, hoverboarding, fly boarding, hydro foiling, or riding in/on any other device that is designed to become airborne from an **"insured boat"**;

   e. **"Your"** employees;

   f. A paid captain or crew; or

   g. Injuries for which benefits are required to be provided by the **"insured"** or which are available to the injured person under any state or federal compensation law or act regardless of its source, and any claims by captain or crew for maintenance and cure, Jones Act liability, or unseaworthiness.

4. **Limit Of Insurance**

   The amount shown for this coverage on the Declarations Page is per person for each person injured in the same **"accident"** regardless of the number of persons involved or claims made.

### G. BOAT TRAILER

1. **Who Is An "Insured"**

   For purposes of **BOAT TRAILER** coverage only, **"you"** are the **"insured."**

2. **Coverage Provided**

   If an amount is shown for this coverage on the Declarations Page, **"we"** will pay for all **"property damage"** to the **"insured trailer"** from any **"accidental"** cause. **"We"** do not pay for any intangible loss, such as loss of value or use. **"We"** are not obligated to accept or pay for an **"insured trailer"** which has been **"abandoned."**

3. **Limit Of Insurance**

   a. **"Insured Value"**

   **"We"** agree with **"you"** that an **"insured trailer"** shall be valued at the amount shown on the Declarations Page or any endorsements.

   b. **Newly Acquired Trailer**

   **"We"** will cover any **"property damage"** to a newly acquired boat trailer, less the deductible, provided that **"you"** notify **"us"** within 30 days of purchase of this newly acquired boat trailer and pay any additional premium.

## SECTION IV – COVERAGES CONTINUED

**"We"** may amend the premium, change the policy terms or conditions, cancel this coverage on the newly acquired boat trailer, or require further conditions for continued coverage. The value of a newly acquired boat trailer shall be the verifiable purchase price.

**c. Amount Paid To "You" In Event Of Loss**

In the event of:

**(1) Total or Constructive Total Loss**

**"We"** will pay the **"insured value"** shown on the Declarations Page. The deductible will not apply in the event of a total or constructive total loss. If **"we"** pay **"you"** the **"insured value," "we"** have a right to the **"insured trailer."**

**(2) Partial Loss**

In the event of a partial loss, **"we"** will pay the reasonable cost of repairs in accordance with quality trailer repair

practice less the deductible shown on the Declarations Page. **"We"** have the option to make, or reimburse **"you"** for, repairs or replacements, or to pay **"you"** directly based on an agreed estimate of loss. Replacements will be made with like kind and quality. This coverage is excess over any other available insurance for the **"insured trailer."**

**4. Exclusions**

**"We"** will not pay for any loss caused directly or indirectly by: wear and tear, gradual deterioration, mechanical or electrical breakdown, bearing failure and resulting damage, overheating regardless of cause, corrosion, manufacturer's defect, faulty repair, previously unrepaired damage, rust, weathering, vermin, animals, marring, scratching or denting.

---

### H. PERSONAL EFFECTS

**1. Who Is An "Insured"**

For purposes of **PERSONAL EFFECTS** coverage only, **"insured"** is defined as:

**a. "You"**; and

**b. "Your" "family member(s)."**

**2. Coverage Provided**

If an amount is shown for this coverage on the Declarations Page, **"we"** will pay for all **"property damage"** to an **"insured's"** personal effects from any accidental cause. **"We"** do not pay for any intangible loss, such as loss of value or use. This coverage only applies to property owned by the **"insured"** named on the Declarations Page and any **"family member,"** and only while the property is aboard an **"insured boat,"** being loaded or unloaded from an **"insured boat,"** or stored in a dock box immediately adjacent to an **"insured boat,"** and including the dock box.

**3. Limit Of Insurance**

**a. "Insured Value"**

**"We"** agree with **"you"** that personal effects shall be valued at **"replacement cost,"** which means the amount to replace

damaged property with new property of like kind and quality. In any one incident or **"accident," "we"** will not be liable for personal effects beyond the amount shown on the Declarations Page regardless of the number of persons involved or claims made in the **"accident."**

**b. Amount Paid To "You" In Event Of Loss**

**"We"** will pay for replacement of the property with like kind and quality, or the amount shown on the Declarations Page, whichever is lower, less the deductible.

**4. Exclusions**

**"We"** do not provide **PERSONAL EFFECTS** coverage for loss or damage caused directly or indirectly by: wear and tear, gradual deterioration, mechanical or electrical failure or disturbance, corrosion, dampness, temperature changes, **"obsolescence,"** vermin, animals, or mysterious disappearance. This insurance does not cover currency, jewelry, furs, china, silver, valuable papers, documents, consumables, antiques, collectibles, **"personal watercraft"** or other boats.

## SECTION IV – COVERAGES CONTINUED

### I. UNINSURED BOATER

1. **Who Is An "Insured"**

   For purposes of **"UNINSURED BOATER"** coverage only, **"insured"** is defined as:

   a. **"You"**;

   b. **"Your"** **"family member(s)"**; and

   c. Any other person using an **"insured boat"** with **"your"** direct and prior permission and without compensation.

2. **Coverage Provided**

   If an amount is shown for this coverage on the Declarations Page, **"we"** will pay the damages which, because of **"bodily injury"** an **"insured"** received aboard an **"insured boat,"** an **"insured"** is legally entitled to recover from an **"uninsured boater"** as the result of a collision by an **"uninsured boater"** with an **"insured boat."**

3. **Arbitration**

   If **"we"** and an **"insured"** do not agree whether that person is legally entitled to recover damages under this coverage, or as to the amount of damages, either party may make written demand for arbitration. If so demanded, arbitration will be mandatory, and claims or disputes under this coverage over whether the **"insured"** is legally entitled to recover damages or as to the amount of these damages will be resolved exclusively by arbitration. Each party will select and pay for a competent arbitrator within 30 days. The arbitrators will select a third arbitrator within 30 days to settle any differences. If they cannot agree on the selection of a third arbitrator within 30 days, either may request that selection be made by a judge of a court having jurisdiction. Arbitration will take place within 30 days of the naming of the third arbitrator in the county where the **"insured"** lives, unless both parties agree otherwise. Local rules of law regarding procedure and evidence will apply. A written agreement by two of the arbitrators will be binding as to whether the **"insured"** is legally entitled to recover damages under this coverage and the amount of these damages.

   Each party will pay their own chosen arbitrator and will share the expenses of the third arbitrator equally. The arbitration must be completed within 90 days of the first notice or demand for arbitration unless extended by agreement of all the parties.

4. **Exclusions**

   **"We"** do not provide **"UNINSURED BOATER"** coverage:

   a. For claims settled without **"our"** written consent;

   b. If the **"uninsured boat"** is owned or operated by a governmental agency or employee;

   c. For boats owned by or furnished for regular use by an **"insured,"** any **"family member,"** or any person insured by this policy;

   d. For anyone using an **"insured boat"** without permission;

   e. When an **"insured boat"** named in this policy is being chartered; or

   f. Where no evidence of physical contact exists between an **"insured boat"** and an unidentified boat, or where no evidence of physical contact exists between an **"insured boat"** and an **"uninsured boat."**

   This coverage will not apply directly or indirectly to the benefit of any insurer under any state or federal compensation law or act.

5. **Limit Of Insurance**

   The amount shown for this coverage on the Declarations Page is the most **"we"** will pay under this coverage, regardless of the number of **"insureds,"** claims made, or boats involved in any one **"accident,"** or series of **"accidents"** arising out of the same event.

   **Payment Reductions**

   Payment under this coverage shall be reduced by:

   a. All sums paid by or on behalf of those legally responsible;

   b. All sums paid by any state or federal compensation law or act; or,

   c. All sums paid under the **BOATING LIABILITY** or **MEDICAL PAYMENTS** coverages of this policy.

   Payment under this coverage to or for an **"insured"** will reduce the amount that person is entitled to recover from the **BOATING LIABILITY** or **MEDICAL PAYMENTS** coverages of this policy.

# SECTION V – GENERAL CONDITIONS

## A. Payment Of Loss

After **"we"** receive all statements and supporting papers, **"we"** will promptly process **"your"** claim. Upon agreement with **"you"** of the amount to be paid, **"we"** may ask **"you"** to complete a notarized Proof of Loss.

After submission of the Proof of Loss, payment will be issued to **"you"** and any lienholder and/or repair yard. **"Your"** cooperation is needed to expedite settlement and payment. If **"you"** do not provide all requested papers within a year of the loss, the claim may be voidable.

## B. "Our" Right To Recover

An **"insured"** may have the right to recover from another party who is responsible for an **"insured's"** loss or loss to an **"insured boat."** If **"we"** pay an **"insured's"** loss under this policy, this right of recovery will belong to **"us"** up to the amount that **"we"** have paid an **"insured."** If an **"insured"** takes any action that impairs **"our"** right to recover, **"we"** can consider this policy without effect as to such loss. However, signing a

written contract for dockage, slip rental, moorage, hauling/launching, storage, repair or maintenance of an **"insured boat"** which includes a waiver of subrogation provision shall not void this policy.

## C. Cancellation

1. **"You"** may cancel this policy at any time by providing **"us"** with advance notification of the cancellation date.

2. Subject to the requirements of state law, **"we"** may cancel this policy by notifying **"you"** in writing before the date the cancellation is to take place. This cancellation notice will be mailed to **"you"** at the address shown on the Declarations Page, and proof of such mailing shall be sufficient proof of notification. Cancellation may be effective prior to the return of premium, if any. The return premium will be calculated on a pro-rata basis.

## D. Hurricane Preparation

If a Tropical Storm or Hurricane Watch or Warning is issued for the location of an **"insured boat"** by the National Oceanic & Atmospheric Administration (NOAA), **"we"** will pay 50% of the cost up to a maximum of $1,000 for having the **"insured boat"** moved by a professional, or for a professional haulout, or for the professional execution of a hurricane plan. In addition to professional moving or a professional haulout, covered expenses include, but are not limited to, haulout, blocking, lashing to in ground anchors, powerwashing and relaunch.

## E. Where Covered

Coverage is provided:

1. While an **"insured boat"** is afloat or ashore within the Cruising Limits shown on the Declarations Page; and

2. While an **"insured boat"** or its equipment is being transported by land conveyance in the United States or Canada.

## F. Private Pleasure Limitation

There is no coverage during any period of chartering, leasing, commercial use or exhibition, or any other non-private pleasure use unless **"you"** have prior written permission from **"us."** There is no coverage if an **"insured boat"** is used for illegal activities.

## G. Other Insurance

1. If there is any other available insurance that would apply in the absence of this policy, this insurance shall apply as excess over all other insurance.

2. When this policy and any other policy covers on the same basis, either excess or primary, **"we"** will pay only **"our"** share. **"Our"** share is the proportion that the **Limit of Insurance** of **"our"** policy bears to the total of the limits of all the policies covering on the same basis.

3. With regards to **HULL AND EQUIPMENT, BOAT TRAILER,** and **PERSONAL EFFECTS** coverages, the combined amount of all available insurance shall not exceed the limits of this policy for any loss.

## H. Transfer Of Interest

Coverage provided by **"us"** will terminate automatically if **"you"** sell or have contracted to sell an **"insured boat"** with consideration, or if **"you"** have assigned an **"insured boat"** or **"insured trailer,"** or any interest in the policy, without **"our"** prior written consent; or, if an **"insured boat"** is legally removed from **"your"** custody for any reason.

## I. No Benefit To Bailee

No person or organization having custody of the property insured and being compensated for services shall benefit from this insurance.

## J. Fraud And Concealment

There is no coverage from the beginning of this policy if any **"insured"** or any **"insured's"** agent has omitted, concealed, misrepresented, sworn falsely, or attempted fraud in reference to any matter relating to this insurance before or after any loss.

## SECTION V – GENERAL CONDITIONS CONTINUED

**K. Legal Action Against "Us"**

No legal action may be brought against **"us"** unless there has been full compliance with all terms of this policy. With respect to any claim or loss to insured property, the action must begin within two years of the date of loss or damage. With respect to any other claim or loss, no legal action may be brought against **"us"** until **"we"** agree in writing that an **"insured"** has an obligation to pay a specified amount, or until the amount of that obligation has been finally determined by judgment after trial. No one has a right under this policy to bring **"us"** into any action to determine the liability of an **"insured."** If any time limitations of this policy are prohibited or invalid under applicable law, then legal action against **"us"** must begin within the shortest limitation of time permitted by such law.

Except as otherwise provided within this policy, any dispute arising under, or in connection with this policy or related to any matter which is subject to this policy, shall be subject to the exclusive jurisdiction of the federal and state courts located within the United States District Court for the Eastern District of Virginia and the United States District Court of the District of Maryland.

**L. Non-waiver Clause**

No action taken on **"our"** part following an **"accident"** or loss to salvage, recover or prevent an **"insured boat"** from further damage, nor any action which may be taken by **"us"** in connection with the investigation of any **"accident"** or loss shall be considered as a waiver of **"our"** rights under this policy.

**M. Controlling Law**

This policy is to be construed under United States federal admiralty law. In the absence of controlling United States federal admiralty law, this policy is to be construed under the laws of the state, territory or possession listed on the Declarations Page as **"your"** address of record, without regard to that jurisdiction's rules on choice of law.

**N. Economic And Trade Sanctions**

Whenever coverage provided by this policy would be in violation of any U.S. economic trade sanctions such as, but not limited to, those sanctions administered and enforced by the U.S. Treasury Department's Office of Foreign Assets Control ("OFAC"), such coverage shall be null and void. Similarly, any coverage relating to or referred to in any certificates or other evidences of insurance or any claim that would be in violation of U.S. economic or trade sanctions as described above shall also be null and void.

## SECTION VI – GENERAL EXCLUSIONS

**A. Racing Exclusion**

**"We"** will not provide any coverage for powerboats while engaged in any speed race or test. **"We"** do cover predicted log cruises or similar competitions and sailboat racing.

**B. War, Seizure, Nuclear Exclusion**

**"We"** will not pay for any loss or damage resulting from:

1. Radioactive contamination or nuclear reaction;

2. War (declared or undeclared), civil war, insurrection, rebellion, revolution, riot, social unrest, piracy, or any consequence of these; or

3. Capture, seizure, arrest or detainment of an **"insured boat"** by any governmental power or authority, whether lawful or unlawful.

GEICO Marine Insurance Company

Secretary

GEICO Marine Insurance Company

President

GMPOL001 03 16

Page 13 of 13

GM002 05 16

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BAHAMAS COVERAGE

Permission is granted for navigation of an **"insured boat"** in the waters of the Bahamas and the Turks and Caicos, not south of 20.5 degrees North Latitude and not east of 70.5 degrees West Longitude.

All other terms, conditions, and agreements of the policy remain unchanged.

GM023 02 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# PREMIER ENHANCEMENT

### SCHEDULE

| COVERAGES | AMOUNT OF INSURANCE/LIMITS | |
|---|---|---|
| Commercial Towing and Assistance | Each Incident | $250 |
| Medical Payments | Limit Per Person Each "Accident" | $10,000 |
| Personal Effects | Insured value, not to exceed | $5,000 |
| **DEDUCTIBLES** | | |
| Dinghy Deductible | $100 | |
| Electronics Deductible | $250 | |
| Information required to complete this Schedule, if not shown above, will be shown in the Declarations. | | |

**"You"** agree to pay additional premium for this coverage.

The policy is amended as follows:

**B. COMMERCIAL TOWING AND ASSISTANCE**

    Increased to the Amount of Insurance/Limits shown in the Schedule of this endorsement or the amount shown on the Declarations Page, whichever is greater.

**F. MEDICAL PAYMENTS**

    Increased to the Amount of Insurance/Limits shown in the Schedule of this endorsement or the amount shown on the Declarations Page, whichever is greater.

**H. PERSONAL EFFECTS**

    Increased to the Amount of Insurance/Limits shown in the Schedule of this endorsement or the amount shown on the Declarations Page, whichever is greater.

**COVERAGE FOR ICE AND FREEZING**

    In consideration that an **"insured boat,"** its engine(s) and systems will be winterized in accordance with the manufacturer's specifications and when an **"insured boat"** is laid up afloat a de-icing or bubbler system will be used, under **SECTION IV - COVERAGES, A. HULL AND EQUIPMENT, 5. Exclusions,** **"b.** any loss caused by or resulting from ice or freezing;" is removed in its entirety.

GM023 02 17

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Under **SECTION III - IN THE EVENT OF A LOSS, 6. Deductible**, the following are added:

**"Dinghy" Deductible**
In the event of loss or damage solely to the **"dinghy,"** as defined by the policy and any endorsements, the deductible applied to each loss is reduced to the **"dinghy"** deductible shown in the Schedule of this endorsement, or the **HULL AND EQUIPMENT** deductible, whichever is less.

**Electronics Deductible**
In the event of loss or damage solely to an **"insured boat's"** Navigational electronics, the deductible applied to each loss is reduced to the Electronics Deductible shown in the Schedule of this endorsement, or the **HULL AND EQUIPMENT** deductible, whichever is less.

All other terms, conditions, and agreements of the policy remain unchanged.

GM023 02 17                                                                                                          Page 2 of 2
GMPOL001
Policy No: BUS5118616              Policy Term:07/27/2019  - 07/27/2020                  Tran Effect: 07/27/2019

GM042 02 17

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BoatU.S. YACHT POLICY ENDORSEMENT

Under **SECTION IV – COVERAGES, A. HULL AND EQUIPMENT, 4. Limit of Insurance, c. Amount Paid To "You" In Event Of Loss, (1) Total or Constructive Total Loss** is removed in its entirety and replaced with:

**(1) Total or Constructive Total Loss**

"**We**" will pay "**you**" the "**insured value**" as defined by this policy if an "**insured boat**" is lost absolutely, or if the reasonable cost of repair exceeds the "**insured value**". "**We**" reserve the right to declare an "**insured boat**" a constructive total loss and pay "**you**" the "**insured value**" if in our judgment costs of the repair and the post-casualty value of an "**insured boat**" exceeds the "**insured value.**" "**We**" are not obligated to accept or pay for an "**insured boat**" or any "**boating equipment**" which "**you**" "**abandon.**" If "**we**" pay "**you**" the "**insured value,**" "**we**" have the right to an "**insured boat**". If "**we**" exercise "**our**" right to acquire an "**insured boat**," "**you**" must provide all documents needed to transfer title to "**us.**" "**You**" agree to allow "**us**" to withhold an amount not to exceed 10% of the "**insured value**" until "**we**" have received these documents.

However, if an "**insured boat**" is declared a total or constructive total loss, or if the reasonable cost of repair exceeds the "**insured value**" then if "**you**" choose "**we**" will pay to replace an "**insured boat**" with the same model, or if such model is not available, then to the extent possible, the same make, class, size and type including comparable equipment to an "**insured boat**".

In either case, such replacement will be new.

Requirements for New Boat Replacement are as follows:

**a.** An "**insured boat**" was purchased new, with no prior owner or users, and no more than 12 months since the manufacture date;

**b.** The total or constructive total loss occurred within the first 48 consecutive months immediately after purchase;

**c.** An "**insured boat**" was not purchased subject to any promotional use agreement or sponsorship with the dealer or manufacturer.

The most "**we**" will pay for the New Boat Replacement, if it exceeds the "**insured value**" as shown on the Declarations Page, will be the lesser of 120% of the "**insured value**" or $300,000.

If "**you**" do not choose this replacement boat coverage that is subject to the above eligibility requirements, then "**we**" will pay "**you**" the "**insured value**" as defined by this policy.

Under **SECTION IV – COVERAGES, A. HULL AND EQUIPMENT, 4. LIMIT OF INSURANCE, c. Amount Paid To "You" In Event Of Loss**, the following is added:

**Repair Guarantee**

In the event of repairs for any covered loss or damage, if "**you**" have such work performed at a facility recommended by "**us**" and in accordance with the method of repair approved by "**us,**" "**you**" will be covered for any additional repairs due to faulty workmanship related to the previously approved repairs for as long as "**you**" own an "**insured boat**" and continuously insure it with "**us**" without any lapse in coverage. No deductible will apply to these additional repair costs. The maximum that "**we**" will pay for all repairs arising out of the faulty repair is the "**insured value**" shown on the Declarations Page. "**We**" reserve the right to select the facility to perform any additional repairs.

GM042 02 17

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

Under **SECTION IV – COVERAGES, C. BOATING LIABILITY (PROTECTION AND INDEMNITY), 3. Exclusions, c.** is removed in its entirety and replaced with:

    **c.** Liability which has been assumed by an **"insured"** under a contract or agreement, or an breach of contract with the following provision:

        **"We"** will cover **"you"** for **"your"** legal liability for **"bodily injury"** or **"property damage"** assumed under a legally enforceable written boat storage or slip rental contract for an **"insured boat"** subject to the limitations outlined in **C. BOATING LIABILITY, 4. Limit Of Insurance**, provided the **"bodily injury"** or **"property damage"** occurs subsequent to the execution of the boat storage or slip rental agreement. Solely for the purposes of liability assumed in a boat storage or slip rental agreement, reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an **"insured"** are deemed to be damages because of **"bodily injury"** or **"property damage,"** provided:

        **(1)** Liability to such party for, or for the cost of, that party's defense has also been assumed in the same boat storage or slip rental agreement; and

        **(2)** Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

Under **SECTION IV – COVERAGES, F. MEDICAL PAYMENTS**, the following is added:

    **Supplemental Family Member Medical Coverage Limit Of Insurance**
    In addition to the amount shown for **MEDICAL PAYMENTS** on the Declarations Page, an additional $25,000 per person shall apply for any covered **MEDICAL PAYMENTS** claim made by any "**family member**."

Under **SECTION IV – COVERAGES**, the following is added:

    **INVESTIGATIVE SERVICES FOR BOAT AND MACHINERY**
    **1.** **Who Is An "Insured"**

        For purposes of Investigative Services for Boat and Machinery coverage only, **"you"** are the **"insured."**

    **2.** **Coverage Provided**

        In the event an **"insured boat"** suffers direct physical damage believed to be the result of a defect caused by manufacture or construction, **"we"** will provide investigative services outlining the probable cause of the loss, the recommended method of repair and the reasonable cost of those repairs. This coverage is supplemental to **HULL AND EQUIPMENT** and applies only if an amount is shown for, **HULL AND EQUIPMENT** on the Declarations Page.

    **3.** **Type of Services**

        Investigative services may include inspection of the damage by a marine surveyor or other professional with a written report of findings and/or laboratory analysis. The Company retains the right to select and assign the appropriate professional for such services.

    **4.** **Coverage Limit**

        The limit of Investigative Services (value of services provided) is 5% of the **"insured value"** of an **"insured boat,"** as stated on the policy Declarations Page under **HULL AND EQUIPMENT**. **"Our"** obligation to investigate ends when this Investigative Services limit is exhausted or when the investigation reveals a cause of damage other than manufacturer's defect. This 5% limit is the

GM042 02 17

## THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.

most **"we"** will pay for investigation of believed defects involving an **"insured boat"** regardless of the number of requests or any series of requests involving an **"insured boat"**. Defects and

warranty problems must be discovered and reported to **"us"** within the policy period stated on the Declarations Page.

**5. Deductible**

There is no deductible applied to this Investigative Services coverage.

**6. Exclusions**

Investigative Services does not apply to:

a. Boats and/or machinery over 10 years of age;

b. Personal effects and boating equipment including electronics;

c. Further investigation upon determination that the loss or damage was caused directly or indirectly by any excluded loss under coverage **HULL AND EQUIPMENT** above; or

d. A failure to exercise due diligence in care and maintenance of an **"insured boat"** in accordance with the manufacturer's specifications.

### LIMITED "PET" COVERAGE PROVIDED

**1. Who Is An "Insured"**

For the purposes of **"Pet"** Medical coverage only, **"insured"** is defined as:

a. **"you"**;

b. A **"family member(s)"**

**2. Coverage Provided**

We will pay the necessary and reasonable veterinary expenses because of an injury to a domestic dog or cat owned by an **"insured"** due to an **"insured boat"** being involved in a covered loss (including, but not limited to, fire, explosion, sinking, demasting, collision or stranding) under **HULL AND EQUIPMENT**. These expenses must be incurred within one year from the date of the **"accident."** If there are any other available insurance or pre-paid benefits that cover such veterinary expenses to the injured domestic dog or cat, this coverage will be excess over such other insurance.

**3. Exclusions**

We do not provide Limited **"Pet"** Medical Payments coverage for:

a. responsibility assumed by an insured under any contract or agreement;

b. a **"pet"** that is injured while the boat is being transported on land;

c. a **"pet"** that is not owned by **"you"** or **"your"** **"family member,"** or who is a stray;

d. a pre-existing injury to the **"pet."**

**4. Limit of Insurance**

The limit of liability for **"Pet"** Medical Coverage is $1,000 per **"pet,"** for each domestic dog or cat injured in the same event regardless of the number of pets involved or claims made.

All other terms, conditions, and agreements of the policy remain unchanged.

GM045 11 15

**THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY.**

# BoatU.S. COMMERCIAL TOWING AND ASSISTANCE

**Under SECTION IV – COVERAGES, B. COMMERCIAL TOWING AND ASSISTANCE**, the following is added:

If there is an amount shown on the Declarations Page for **COMMERCIAL TOWING AND ASSISTANCE, "we"** will pay for the expenses incurred for commercial towing and assistance of an **"insured boat"** or **"insured trailer"** from a breakdown at sea or on the road, when the commercial towing and assistance is dispatched or preauthorized by the BoatU.S. 24 hour Dispatch Services. "**We**" will pay this expense directly to the provider or reimburse **"you"** at **"our"** option. Covered expenses are limited to the following services provided by a commercial vendor, on land or water:

   a.   Towing of an **"insured boat"** or **"insured trailer"** to the nearest safe location;
   b.   The cost of delivering gas, oil, tire(s) or repair part(s) and labor at site of disablement when available, but excluding the cost of any gas, oil, tire(s) or repair part(s).

This coverage does not apply when an **"insured boat"** is docked, moored or located in a safe harbor or the **"insured trailer"** (with or without an **"insured boat"**) is in a parking space. The maximum amount of coverage for any one incident or series of incidents arising out of the same breakdown is the amount shown on the Declarations Page for **COMMERCIAL TOWING AND ASSISTANCE**. The most "**we**" will pay in any one policy year is two times the coverage limit shown on the Declarations Page. No deductibles will apply to this coverage.

All other terms, conditions, and agreements of the policy remain unchanged.

GM045 11 15                                                                                         Page 1 of 1

Policy No: BUS5118616-03          Policy Term: 07/27/19 - 07/27/20          Tran Effect: 07/27/19