UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
Jacksonville Division

**IN ADMIRALTY**

GEICO Marine Insurance Company,        Case No.: 3:20-cv-00952-BJD-JRK

      Plaintiff,

vs.

Grantland Kingman, Diane Jarvis, and
Comerica Bank,

      Defendants.

_____/

## SECOND AMENDED COMPLAINT
## FOR DECLARATORY JUDGMENT

Plaintiff, GEICO Marine Insurance Company (hereinafter referred to as "GEICO Marine" or "Plaintiff"), through undersigned counsel, sues the Defendants, Grantland Kingman, Diane Jarvis and Comerica Bank (hereinafter referred to as "Kingman", "Jarvis" and "Comerica" or collectively as the "Defendants"), for declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, and sues Jarvis for damages, and alleges as follows:

1.     GEICO Marine files this Amended Complaint to obtain a judicial determination and declaration of the parties' rights and obligations under GEICO Marine policy number BUS5118616-03 issued to Defendants for the period from July 27, 2019 to July 27, 2020 (hereinafter the "Policy") and to recover damages.

2.     The policy attached to this complaint as Exhibit "A" is a true and correct copy of the Policy issued to the Defendants.

3.     An actual and justiciable controversy exists relating to the parties' respective rights, duties, and obligations under the Policy.

4.     Specifically, GEICO Marine seeks a declaratory judgment that the Policy does not provide coverage for claims asserted by the Defendants for damage to the S/V Monarch, a 1974 Hinckley Yachts 49-foot mono hull sailing vessel (hereinafter referred to as the "Vessel").

5.     Defendants claim that the Policy provides coverage for damage to the Vessel.

6.     GEICO Marine contends that the Policy does not provide coverage.

7.     There is an actual controversy between GEICO Marine and the Defendants involving their respective rights and liabilities under the Policy.

8.      This matter is now ripe for adjudication.

## The Parties

9.      GEICO Marine is an insurance company authorized to transact insurance business in the State of Florida.

10.      Defendants are the owners of the Vessel.

11.      Kingman resides in Green Cove Springs in Clay County, Florida.

12.      Jarvis resides in Fernandina Beach in Nassau County, Florida.

13.      Comerica is a bank and financial services company listed as the loss payee on the Policy.

## Jurisdiction and Venue

14.      This case falls within the Court's admiralty and maritime jurisdiction under 28 U.S.C. § 1333.

15.      Plaintiff designates this claim as an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure.

16.      Venue is proper in this district because Kingman and Jarvis reside in this district and are subject to personal jurisdiction and service of process in this district.

17.    Marine insurance policies, like the Policy GEICO Marine issued to Kingman and Jarvis, are maritime contracts subject to this Court's admiralty and maritime jurisdiction.

## Facts and Relevant Policy Provisions

18.    On or about July 20, 2020, GEICO Marine received a telephone call from Jarvis reporting that the Vessel had been vandalized and needed to be towed to a commercial dock. GEICO Marine paid one thousand three hundred dollars ($1,300.00) to have the vessel towed.

19.    In a later telephone call to GEICO Marine, Jarvis identified Kingman as the person who had vandalized the Vessel.

20.    Among other things, Jarvis stated that Kingman had cut the fuel line and damaged the Vessel's fuel pump.

21.    As support for her assertion that Kingman had vandalized the Vessel, Jarvis had her attorney provide a copy of a text message sent by Kingman to Jarvis which states that if the Vessel's engine is started "there is a risk of fire or flooding the boat.  I don't know which would happen first."

22.    GEICO Marine appointed a marine surveyor to inspect the damage, but Jarvis denied him access to the Vessel.

23.    A second attempt was made to inspect the Vessel on August 12, 2020, and on that occasion the inspection was permitted.

24.    At the time of the survey, Jarvis provided the surveyor with a written list of 21 items of alleged damage to the Vessel which she titled "List of Vandalized Property on Monarch."

25.    Based on his inspection of the Vessel, discussion with Jarvis and investigation of the claim, the surveyor made the following findings:

a.    Jarvis reported that Kingman had removed the doorknob on the back door.

b.    A vessel mechanic stated the fuel line had been gouged and cut.

c.    The fuel pumps were reported to have been mysteriously disconnected.

d.    The bow thruster had been cut out.   Jarvis told the surveyor that she thought Kingman believed she would not be able to move the vessel without it.

e.    The shore power was not charging the house batteries, which appeared to be a maintenance or mechanical issue.

f.    There was a damaged starboard aft stanchion which appeared to be a mechanical issue because the broken portion was corroded.

g.    The upper and lower lifelines were damaged which again appeared to be a mechanical issue because there was corrosion on the cables and missing plastic shroud.

h.    The striker was removed from inside the ship's bell.  Jarvis stated that she had no idea why Kingman would take that.

i.    The latch on the hatch was broken. Jarvis stated that this was not previously damaged, and it made her feel unsafe.

j.    Jarvis reported 9 feet of teak missing which was apparently taken at the time of the vandalism.

k.    The midship hatch was gouged out.

l.    The aft head was disconnected.  This appeared to be a maintenance problem.

m.    Jarvis reported that antique brass candlesticks were missing and apparently taken during the vandalism.

n.    Jarvis reported that designer prescription glasses were missing and apparently taken at the time of vandalism.

o.      A special wash handle was also apparently taken during the vandalism.

p.      The 50-amp splitter was destroyed. There were 2 burn marks indicating a maintenance or mechanical issue.

q.      A sizzling sound was noted when the shore power was turned on.  This was attributed to a likely maintenance or mechanical issue.

r.      The compressor would not turn on as a result of a likely maintenance or mechanical issue.

s.      The inverter was blown. The surveyor believes this is a possible maintenance or mechanical issue.

t.      The dishwasher would not start, because there were objects in the strainer.  The surveyor concluded this was most likely a maintenance or mechanical issue.

u.      Jarvis claimed that recliners on the Vessel were damaged, but the damage appeared to be from normal wear and tear with no visible signs of cuts or abuse.

v.     There is a hole in the bow. The harbor master advised that Kingman struck the dock with the bow while attempting to moor the vessel and had covered the damage with tape.

26.    Section IV, subparagraph 3 of the Policy states:

"**We**" will pay for "**property damage**" to an "**insured boat**" its engines and items listed in **Coverage Provided** from any accidental cause including theft or vandalism. "**We**" do not pay for any intangible loss, such as loss of use or value, living expenses, or "**obsolescence**." All coverages are subject to the limitations and exclusions of the policy."

27.    Property damage is defined in the Policy as "direct physical injury to, or destruction of, tangible property."

28.    The coverage provided by the Policy under Section IV is subject to the following exclusions:

5. **Exclusions**

This insurance does not cover:

a. Any loss caused directly or indirectly by wear and tear, gradual deterioration, mechanical or electrical breakdown, overheating, galvanic action, rot, mold or mildew, corrosion, electrolysis, marring, scratching, denting, vermin, animals, marine life, or insects;

* * *

8

e.  Any loss, damage, expense or cost of repair caused directly or indirectly by incomplete, improper or faulty repair, maintenance, or renovation;

* * *

g.  Any loss, damage or expense caused intentionally by, with the knowledge of, or resulting from criminal wrongdoing by any "**insured**";

* * *

i.  Any personal items (including, but not limited to, scuba gear, fishing gear including rods, reels, and tackle, sporting goods, clothing, portable televisions and stereos, and cameras, ….

29.    Additionally, Section V – General Conditions, Paragraph M provides:

> "This policy is to be construed under United States federal admiralty law. In the absence of controlling United States federal admiralty law, this policy is to be construed under the laws of the state listed on the Declarations Page as "your" address of record, without regard to that jurisdiction's rules on choice of law."

30.    The damage to the Vessel claimed by the Defendants was not accidental or fortuitous.

31.    The damage to the Vessel claimed by the Defendants falls into one of the exclusions quoted above.

32.    In his Examination Under Oath ("EUO") taken on August 25, 2020, Kingman acknowledged that much of the claimed damage was simple maintenance because of wear and tear.

> The things that your surveyor found, okay, were some of the things that she wanted me to fix.  And you can see what your surveyor's comments were. They were just maintenance type items, typical wear and tear.  You know, the broken stanchion was corroded and that's probably partly why it broke. And, you know, those kind of things.  And so, you know, to me, if that happened, stanchion broke, I'd just take it off and go take it to a weld shop and get it fixed, put it back on. But Diane doesn't seem to be capable of that. She wants, you know, somebody else to pay for that, and so I think the same thing with the bow, okay.  I would never put a claim in for the damage to the bow. I've repaired -- I've repaired the stern, the sides of the hull, the bottom of the hull, the whole hard dodger was -- I made that out of fiberglass.  You know, I'm very capable of working with fiberglass and I would have never put a claim in.  I would have just finished that repair that I was doing to the bow, so.

(Kingman EUO, pp. 19:16 – 20:9).

33.    Because the reported losses are not covered or are expressly excluded under the Policy, GEICO Marine denied coverage for the losses.

## Count I – Lack of Coverage

34.     Plaintiff restates the allegations in paragraph 1 through 33 and further alleges as follows:

35.     Only accidental or fortuitous damage is covered by the Policy.

36.     Intentional damage, damage caused directly or indirectly by wear and tear, gradual deterioration or corrosion and damage resulting from lack of maintenance is not accidental or fortuitous.

37.     As the damages claimed by the Defendants are neither accidental nor fortuitous, they do not come within the coverage provided by the Policy.

WHEREFORE, GEICO Marine respectfully requests that a declaratory judgment be entered in its favor and against the Defendants finding that the Policy does not provide coverage for their losses and awarding further relief deemed proper under the circumstances.

## Count II – Intentional Acts Exclusion

38.     Plaintiff restates the allegations in paragraph 1 through 33 and further alleges as follows:

39.     Any damage to the Vessel caused intentionally by Kingman is expressly excluded from coverage.

40.     The intentional acts exclusion applies to both Defendants, even though only Kingman is alleged to have committed the damage.

41.     There is no coverage under the Policy for damage intentionally done by Kingman.

WHEREFORE, GEICO Marine respectfully requests that a declaratory judgment be entered in its favor and against the Defendants finding that any damage caused intentionally by Kingman is expressly excluded from coverage and awarding further relief deemed proper under the circumstances.

## Count III – Wear and Tear

42.     Plaintiff restates the allegations in 1 through 33 and further alleges as follows:

43.     Any damage or "loss caused directly or indirectly by wear and tear, gradual deterioration, mechanical or electrical breakdown, overheating, galvanic action, rot, mold or mildew, corrosion, electrolysis, marring, scratching [or] denting" is expressly excluded from coverage under exclusion 5a.

44.     Specifically, the following items of damage fall under this exclusion:

12

a. The shore power was not charging the house batteries, which appeared to be a maintenance or mechanical issue.

b. There was a damaged starboard aft stanchion which appeared to be a mechanical issue because the broken portion is corroded.

c. The upper and lower lifelines were damaged which again appeared to be a mechanical issue because there was corrosion on the cables and missing plastic shroud.

d. The aft head was disconnected. This appeared to be a maintenance problem.

e. The 50-amp splitter was destroyed. There were 2 burn marks indicating a maintenance or mechanical issue.

f. A sizzling sound was noted when the shore power was turned on. This was attributed to a likely maintenance or mechanical issue.

g. The compressor would not turn on. The surveyor believes this is a likely maintenance or mechanical issue.

h. The inverter was blown. The surveyor believes this is a possible maintenance or mechanical issue.

i.   The dishwasher would not start, because there were objects in the strainer.  The surveyor concluded this was most likely a maintenance or mechanical issue.

j.   Jarvis claimed that recliners on the vessel were damaged, but the damage appeared to be from normal wear and tear with no visible signs of cuts or abuse.

45.   Because these items of damage fall under exclusion 5a., there is no coverage for them under the Policy.

WHEREFORE, GEICO Marine respectfully requests that a declaratory judgment be entered in its favor and against the Defendants finding that any damage caused directly or indirectly by wear and tear, gradual deterioration, mechanical or electrical breakdown, overheating, galvanic action, rot, mold or mildew, corrosion, electrolysis, marring, scratching denting is expressly excluded from coverage and awarding further relief deemed proper under the circumstances.

### Count IV – Personal items

46.   Plaintiff restates the allegations in 1 through 33 and further alleges as follows Plaintiff restates the allegations in 1 through 33 and further alleges as follows:

47.    Defendant's claim for loss of personal items is expressly excluded from coverage.

48.    The personal items claimed by Defendants include the following:

a.    The striker was removed from inside the ship's bell.  Jarvis stated that she had no idea why Kingman would take that.

b.    Jarvis reported that antique brass candlesticks were missing and apparently taken during the vandalism.

c.    Jarvis reported that designer prescription glasses were missing and apparently taken at the time of vandalism.

49.    Because these items of loss fall under exclusion 5i., there is no coverage for them under the Policy.

WHEREFORE, GEICO Marine respectfully requests that a declaratory judgment be entered in its favor and against the Defendants finding that any loss or damage to personal items is expressly excluded from coverage and awarding further relief deemed proper under the circumstances.

## Count V – Damages

50.    Plaintiff restates the allegations in paragraphs 1 through 33 and further alleges as follows:

15

51.    Plaintiff conferred a benefit on Jarvis by paying to have the Vessel towed.

52.    Jarvis had knowledge that Plaintiff paid to have the Vessel towed and voluntarily accepted and retained the benefit of that payment.

53.    The circumstances are such that it would be inequitable for the Jarvis to retain the benefit of the towage payment without paying the value thereof to the Plaintiff. Specifically, it is inequitable for the Jarvis to retain the benefit of the towing or any other expenses when the need to incur those expenses flows from damage intentionally caused by Kingman.

WHEREFORE, Plaintiff respectfully requests that this Court award it damages against the Jarvis, jointly and severally, and further relief deemed proper under the circumstances.

*(Signature page follows).*

Respectfully submitted,

> WHITEBIRD, PLLC.
> Attorneys for Plaintiff
> GEICO Marine
>
>
> /s/ Ted L. Shinkle
> Ted L. Shinkle, Esq.
> Florida Bar No.: 608051
> 730 E. Strawbridge Ave., #209
> Melbourne, FL 32901
> Phone:  321-327-5580
> Fax: 321-327-5565
> Email: tshinkle@whitebirdlaw.com
> Secondary: jaliano@whitebirdlaw.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY on this 20th day of May, 2021 that a true and correct copy of the foregoing has been filed with the Clerk of the Court, U.S. District Court, Middle District of Florida, using the CM/ECF filing system.

> /s/ Ted L. Shinkle
> Ted L. Shinkle, Esq.